UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

JOSEPH SORDI,

*DKT#:*

Plaintiff,

**COMPLAINT**

- against -

**JURY TRIAL DEMANDED**

THE COUNTY OF SUFFOLK,
P.O. THEODORE LAMONICA, JR. (Badge/PO# 5171),
P.O. O'REILLY (Badge/PO# 5549),
SGT. BURNS, and P.O. "JOHN DOE" #1-10, Individually
and in their official capacities (the name John Doe being
fictitious as the true names are presently unknown),

CV 13 - 1149

FEUERSTEIN, J.

Defendant.

-------------------------------------------------------------------x

Plaintiff, JOSEPH SORDI, by his attorneys, TREYVUS & KONOSKI, P.C.,

complaining of the defendants, respectfully allege as follows:

### PRELIMINARY STATEMENT

1. Plaintiff brings this action for compensatory damages, punitive damages and

attorney's fees pursuant to 42 U.S.C. §§ 1983, 1985, and 1988 for violations of his civil rights, as

said rights are secured by said statutes and the Constitutions of the State of New York and the

United States.

### JURISDICTION

2. This action is brought pursuant to 42 U.S.C. §§ 1983, 1985, and 1988, and the

First, Fourth, Fifth, Eight and Fourteenth Amendments to the United States Constitution.

3. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343 and 1367.

### VENUE

4. Venue is properly laid in the Eastern District of New York under 28 U.S.C. §

1391(b), in that this is the District in which the claim arose.

## JURY DEMAND

5.  Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6.  Plaintiff, JOSEPH SORDI, is a citizen of the United States and at all relevant times a resident of the City and State of New York.

7.  Plaintiff, JOSEPH SORDI, is a police officer with the rank of Sergeant and is employed by the New York City Police Department.

8.  THE COUNTY OF SUFFOLK, was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

9.  THE COUNTY OF SUFFOLK, maintains the Suffolk County Police Department, a duly organized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, THE COUNTY OF SUFFOLK.

10. That at all times hereinafter mentioned, the individually named defendants, P.O. THEODORE LAMONICA, JR. (Badge/PO# 5171), P.O. O'REILLY (Badge/PO# 5549), SGT. BURNS, and P.O. "JOHN DOE" #1-10, were duly sworn police officers of the Suffolk County Police Department and were acting under the supervision of said department and according to their official duties.

11. That at all times hereinafter mentioned, the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New York or THE

COUNTY OF SUFFOLK.

12. Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant, COUNTY OF SUFFOLK.

13. Each and all of the acts of the defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant, COUNTY OF SUFFOLK.

## FACTS

### *THE WHISPERING VOICE and THE CALL TO POLICE*

14. On or about March 28, 2012 CHRISTIE DEMONTE was the ex-girlfriend of the Plaintiff. Prior to the incidents alleged herein CHRISTIE DEMONTE lived with the Plaintiff for approximately 2 years. However, as of March 28, 2012, CHRISTIE DEMONTE and the Plaintiff had "broken up" and were no longer residing together.

15. On or about March 28, 2012, at approximately 8:14 a.m., CHRISTIE DEMONTE received a telephone call on her cellphone from a "blocked" number. The call went through to voicemail and the caller left a message. The caller left a message in a whispering voice that said "Fuck me, You're gonna die bitch."

16. The message created concern for CHRISTIE DEMONTE since the voicemail contained a threat.

17. CHRISTIE DEMONTE went to MICHELLE SORDI's residence to discuss the message.

18. MICHELLE SORDI was the Plaintiff's ex-wife.

19. While at MICHELLE SORDI's residence, MICHELLE SORDI listened to the voicemail and called the police. JOHN DOE Police Officers arrived at MICHELLE SORDI's residence at approximately 11:30 a.m.

### *THE WHISPERING VOICE WAS IDENTIFIED UNDER UNDUE INFLUENCE*

20. The JOHN DOE Police Officers were at MICHELLE SORDI's residence for approximately 5-hours. During the time that the JOHN DOE Police Officers were present at the residence, CHRISTIE DEMONTE was subjected to relentless questioning about the identity of the caller. However, CHRISTIE DEMONTE did not identify the Plaintiff as the caller for many hours.

21. When CHRISTIE DEMONTE was directly asked for an identification of the voice, she told the JOHN DOE Police Officers that she was unsure of the identity of the caller. CHRISTIE DEMONTE could not identify the Plaintiff as the caller and the JOHN DOE Police Officers were aware that she could not identify the Plaintiff as the caller.

22. Under relentless pressure by the JOHN DOE Police Officers over the course of hours of questioning, CHRISTIE DEMONTE finally informed the JOHN DOE Police Officers that she believed the voice on the message was "possibly" Plaintiff's voice. However, her statement indicated uncertainty and was equivocal.

23. The JOHN DOE Police Officers told CHRISTIE DEMONTE that they needed to know that it was Plaintiff's voice and that she needed to be 100% sure it was Plaintiff.

24. MICHELLE SORDI then stated, in the presence of the JOHN DOE Police Officers, "you know it's Joe. You need to protect me and the kids". CHRISTIE DEMONTE still expressed uncertainty to MICHELLE SORDI and the JOHN DOE Police Officers. However, under the pressure of the situation CHRISTIE DEMONTE signed a statement identifying the Plaintiff, JOSEPH SORDI, as the caller who left the whispering voicemail message.

25. Based upon the totality of the circumstances as they were occurring on March 28, 2012 at MICHELLE SORDI's residence, including (1) the fact that the JOHN DOE Police

Officers were present for numerous hours subjecting CHRISTIE DEMONTE to relentless questioning without a positive identification, (2) that CHRISTIE DEMONTE expressed that she was unsure whether the voice was that of the Plaintiff, (3) the fact that the JOHN DOE Police Officers insisted on an unequivocal identification despite CHRISTIE DEMONTE's uncertainty, and (4) that MICHELLE SORDI insisted on an unequivocal identification in the presence of the JOHN DOE Police Officers, the identification of the Plaintiff was made under duress, coercion, and was based on unduly suggestive procedures perpetrated by the JOHN DOE Police Officers.

26. After the statement identifying the Plaintiff as the caller was signed, the JOHN DOE Police Officers left MICHELLE SORDI's residence.

### *THE REPEATED STATEMENTS THAT THE IDENTIFICATION WAS A MISTAKE IS IGNORED BY POLICE*

27. At approximately 4:45 p.m. on March 28, 2012, CHRISTIE DEMONTE received a phone call from P.O. THEODORE LAMONICA, JR. He asked for CHRISTIE DEMONTE to go to the 4th Precinct so that he could record the voice message. Upon her arrival she immediately advised him that she made a mistake and that she still could not identify the caller. However, P.O. THEODORE LAMONICA, JR. informed CHRISTIE DEMONTE that she could not withdraw the charges nor could she make any changes to her statement. P.O. THEODORE LAMONICA, JR. prepared a second statement identifying the Plaintiff as the caller who left the whispering voicemail message and he insisted that CHRISTIE DEMONTE sign the statement. P.O. THEODORE LAMONICA, JR. demanded or unduly influenced CHRISTIE DEMONTE to sign the statement identifying Plaintiff as the caller who left the voicemail message despite the fact that she stated she could not identify the caller as the Plaintiff. This second statement was labeled with identifying number PDCS-1165b.

28. The next day, on March 29, 2012, CHRISTIE DEMONTE called the 4th Precinct and

spoke to a JOHN DOE Police Officer who represented himself to be a supervisor. She explained to this JOHN DOE Police Officer that she made a mistake and that she did not recognize the voice on the message to be the Plaintiff's voice. The JOHN DOE Police Officer informed CHRISTIE DEMONTE that she could not withdraw the charge.

29. From the evening of March 28, 2012 until April 3, 2012 (the date of the Plaintiff's arrest) CHRISTIE DEMONTE continuously called the 4th Precinct and spoke to JOHN DOE Police Officers and reiterated that she made a mistake and could not identify the Plaintiff as the caller. The JOHN DOE Police Officers informed CHRISTIE DEMONTE each time she called that there was nothing that could be done and that she could not withdraw the charges.

30. Based on the totality of the circumstances, including the repeated claims from CHRISTIE DEMONTE that she could not identify the caller based upon the whisper, and the fact that the Defendant Police Officers were informed that she could not identify the caller, there was no probable cause to believe that the Plaintiff was the perpetrator of the crime, nor was there any probable cause to arrest the Plaintiff.

## NYPD INVESTIGATION OCCURS BEFORE THE ARREST OF THE PLAINTIFF AND DETERMINES THAT THERE IS NO PROBABLE CAUSE AND THAT THE PLAINTIFF COULD NOT HAVE CALLED CHRISTIE DEMONTE

31. At approximately 2:15 p.m. on March 28, 2012, SGT. BURNS of the Suffolk County Police Department contacted the New York City Police Department Internal Affairs Bureau ("IAB") and reported the CHRISTIE DEMONTE cell phone incident to them. SGT. BURNS identified Plaintiff as the perpetrator of that crime to IAB.

32. LT. TARPEY and LT. McCARTHY of IAB conducted an investigation into the allegations raised by SGT. BURNS.

33. The IAB investigation revealed that Plaintiff was with his supervisor, LT. REYES,

and was never out of the sight of LT. REYES, and never had an opportunity to make a phone call at the time that the phone call was made and the whispering voicemail message was left for CHRISTIE DEMONTE.

34. As a result of the IAB investigation the Plaintiff had a viable Alibi defense with credible witnesses that precluded any possibility that he was the perpetrator of the crime.

35. IAB communicated their findings to SGT. BURNS and the Suffolk County Police Department. Thus, SGT. BURNS and the Defendant Police Officers had knowledge that the Plaintiff could not have left the whispering voicemail message on CHRISTIE DEMONTE's cellphone. Consequently, the Defendant Police Officers had no probable cause to arrest the Plaintiff.

***FAILURE TO INVESTIGATE FURTHER***

36. Since CHRISTIE DEMONTE retracted her identification of the Plaintiff as the caller and since IAB determined that the Plaintiff could not have made the call, in addition to all other circumstances present in this case, SGT. BURNS and the Defendant Police Officers had no probable cause to believe the Plaintiff made the call nor did they have probable cause to arrest the Plaintiff.

37. Under the circumstances of this case, reasonable police officers would have found it prudent to, or would have been required to, perform additional investigation, including, but not limited to: obtain telephone records to determine whether there was any proof as to the identity of the caller.

38. SGT. BURNS and the Defendant Police Officers knowingly, intentionally, willfully, recklessly and maliciously failed to and/or refrained from obtaining any telephone records in an attempt to obtain the true identity of the caller.

### *THE ARREST WARRANT*

39. Despite the repeated statements by CHRISTIE DEMONTE that she did not know whose voice was on her voicemail, and despite the findings of IAB that the Plaintiff could not have left the message, and despite having no sufficient proof or evidence that the Plaintiff left the message, SGT. BURNS obtained an arrest warrant for Plaintiff's arrest.

40. SGT. BURNS withheld the fact that CHRISTIE DEMONTE repeatedly stated she could not identify the Plaintiff as the person who left her message from the Court at the time he applied for the arrest warrant. SGT. BURNS knowingly, intentionally, willfully and maliciously withheld this information from the Court in an effort to obtain an arrest warrant despite having no probable cause to arrest.

41. SGT. BURNS withheld the fact that there existed an alibi with credible witnesses from the Court at the time he applied for the arrest warrant. SGT. BURNS knowingly, intentionally, willfully, and maliciously withheld this information from the Court in an effort to obtain an arrest warrant despite having no probable cause to arrest.

42. The Court issued an arrest warrant for the Plaintiff based upon the misrepresentations and false and misleading information of SGT. BURNS.

### *THE ARREST OF THE PLAINTIFF*

43. SGT. BURNS of the Suffolk County Police Department knew that there was no probable cause to arrest the Plaintiff and knew that he had obtained an arrest warrant based upon false or misleading information provided to the Court. However, on April 3, 2012, the Plaintiff was arrested by SGT. BURNS of the Suffolk County Police Department. The arrest was carried out with the assistance of numerous JOHN DOE Police Officers, each of whom knew of the fact that there was no probable cause to arrest the Plaintiff.

44. The Plaintiff was charged with Aggravated Harassment in the Second Degree in violation of PL § 240.30(1)(A) under docket number 2012SU018395.

45. P.O. THEODORE LAMONICA, JR. signed the criminal complaint under docket number 2012SU018905 despite knowing that there was no probable cause to arrest or prosecute the Plaintiff.

## *POST-ARREST INFORMATION PROVIDED TO THE POLICE*

46. On April 3, 2012, after the Plaintiff was arrested, CHRISTIE DEMONTE made another statement to the Police. The statement was labeled with identifying number PDCS-1165b. That statement indicated that CHRISTIE DEMONTE was not positive as to who left the message. Moreover, the statement indicates that CHRISTIE DEMONTE contacted the Police Department repeatedly because she did not know who left the message and was continuously informed by Suffolk County Police Officers that she could not withdraw the charges.

47. This statement on April 3, 2012, was made before the Plaintiff was arraigned on the criminal charges. This statement, in addition to all of the prior statements, in addition to the IAB investigation, and all other circumstances present in the case, demonstrates that the Defendant Police Officers lacked probable cause to adequately identify the Plaintiff as the perpetrator of the crime and lacked probable cause to arrest the Plaintiff.

48. The Defendant Police Officers had ample opportunity to cease the arrest process in light of the fact that they knew that there was no probable cause to arrest and prosecute the Plaintiff.

49. P.O. O'REILLY and the other Defendant Police Officers knowingly, intentionally, willfully, and maliciously, disregarded the fact that there was no probable cause to arrest and charge the Plaintiff and finalized the arrest and subjected the Plaintiff to a criminal prosecution.

## *OUTCOME OF THE CRIMINAL CASE*

50. The Plaintiff did not call CHRISTIE DEMONTE and leave the whispering voicemail message on March 28, 2012.

51. On June 9, 2012, the criminal case was dismissed.

## *PLAINTIFF'S FIREARMS ARE UNLAWFULLY SEIZED*

52. Because of the fact that the Plaintiff was arrested, his firearms were seized by the Suffolk County Police Department.

53. Once the criminal case was dismissed, the COUNTY OF SUFFOLK and the Suffolk County Police Department had no right or authority to continue to maintain possession of the firearms.

54. The COUNTY OF SUFFOLK, the Suffolk County Police Department, and the Defendant Police Officers have refused to return the Plaintiff's firearms despite having no right or authority to continue to maintain possession of the firearms.  This amounts to an unlawful seizure of Plaintiff's personal property under the United States Constitution.

## FIRST CLAIM FOR RELIEF
## DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983

55. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "54" with the same force and effect as if fully set forth herein.

56. All of the aforementioned acts of defendants, their agents, servants and employees were carried out under the color of law.

57. All of the aforementioned acts deprived plaintiff JOSEPH SORDI of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America

and in violation of 42 U.S.C. § 1983

58. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with all the actual and/or apparent authority attendant thereto.

59. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures and rules of THE COUNTY OF SUFFOLK and the Suffolk County Department, all under the supervision of ranking officers of said department.

60. Defendants collectively and individually, while acting under color of state law, engaged in conduct which constituted a custom, usage, practice, procedure or rule of his/her respective municipality/authority, which is forbidden by the Constitution of the United States.

**SECOND CLAIM FOR RELIEF**
**FALSE ARREST UNDER 42 U.S.C § 1983**

61. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "60" with the same force and effect as if fully set forth herein.

62. As a result of defendants' aforementioned conduct, plaintiff JOSEPH SORDI and was subjected to an illegal, improper and false arrest by the defendants and taken into custody and caused to be falsely imprisoned, detained, confined, and incarcerated by the defendants without any probable cause, privilege or consent.

63. That the detention of the plaintiff by defendant was objectively unreasonable and in violation of JOSEPH SORDI's constitutional rights.

64. As a result of the foregoing, plaintiff's liberty was restricted for an extended period of time, and plaintiff was put in fear for his safety, was humiliated and subjected to handcuffing, and other physical restraints, all without probable cause, and plaintiff sustained,

inter alia, loss of earnings, loss of enjoyment of life, loss of liberty, emotional distress, mental anguish, embarrassment and humiliation, shame, indignity, damage to reputation, incurred monetary costs, and deprivation of his constitutional rights.

### THIRD CLAIM FOR RELIEF
### MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983

65. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "64" with the same force and effect as if fully set forth herein.

66. Defendants were directly and actively involved in the initiation of criminal proceedings against Plaintiff.

67. Defendants lacked probable cause to initiate criminal proceedings against Plaintiff.

68. Defendants acted with malice in initiating criminal proceedings against Plaintiff.

69. Defendants were directly and actively involved in the continuation of criminal proceedings against Plaintiff.

70. Defendants lacked probable cause to continue criminal proceedings against Plaintiff.

71. Defendants acted with malice in continuing criminal proceedings against Plaintiff.

72. Notwithstanding the conduct of the Defendants, the criminal proceedings were terminated in Plaintiff's favor when all criminal charges against him were dismissed.

73. As a result of the foregoing, plaintiff's liberty was restricted for an extended period of time, and plaintiff was put in fear for his safety, was humiliated and subjected to handcuffing, and other physical restraints, all without probable cause, and plaintiff sustained, inter alia, loss of earnings, loss of enjoyment of life, loss of liberty, emotional distress, mental anguish, embarrassment and humiliation, shame, indignity, damage to reputation, incurred monetary costs, and deprivation of his constitutional rights.

## FOURTH CLAIM FOR RELIEF
## <u>MALICIOUS ABUSE OF PROCESS UNDER 42 U.S.C. § 1983</u>

74. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "73" with the same force and effect as if fully set forth herein.

75. Defendants issued legal process to detain the plaintiff and subject him to an unlawful seizure of his person, to an illegal and unlawful arrest, and to unlawfully subject his property to a search and seizure.

76. Defendants actions were designed to obtain a collateral objective outside the legitimate ends of the legal process.

77. Defendants acted with intent to do harm to JOSEPH SORDI without excuse or justification.

78. As a result of the foregoing, plaintiff's liberty was restricted for an extended period of time, and plaintiff was put in fear for his safety, was humiliated and subjected to handcuffing, and other physical restraints, all without probable cause, and plaintiff sustained, <u>inter alia</u>, loss of earnings, loss of enjoyment of life, loss of liberty, emotional distress, mental anguish, embarrassment and humiliation, shame, indignity, damage to reputation, incurred monetary costs, and deprivation of his constitutional rights.

## FIFTH CLAIM FOR RELIEF
## <u>CONSPIRACY TO VIOLATE CIVIL RIGHTS UNDER 42 U.S.C. § 1985</u>

79. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "78" with the same force and effect as if fully set forth herein.

80. Each of the Defendants including conspired to violate Plaintiff's civil rights by agreeing among themselves to engage in the conduct set forth above for which the defendants are individually liable.

81. All of the aforementioned Defendants conspired by agreeing among themselves to engage in the conduct set forth above, in violation of 42 U.S.C. § 1985, for which the defendants are individually liable.

## SIXTH CLAIM FOR RELIEF
## UNLAWFUL SEIZURE (OF PROPERTY) UNDER 42 U.S.C § 1983

82. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "81" with the same force and effect as if fully set forth herein.

83. As a result of the defendant's aforementioned conduct, plaintiff was subjected to an illegal, improper and unlawful seizure of his personal property (i.e., firearms) without any probable cause, privilege, or consent.

84. That seizure of the plaintiff's personal property was objectively unreasonable and in violation of each of the plaintiff's constitutional rights.

85. As a result of the foregoing, the plaintiff was humiliated, embarrassed, and suffered loss of property, loss of use and enjoyment of his property, and incurred monetary costs.

## SEVENTH CLAIM FOR RELIEF
## MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983

86. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "85" with the same force and effect as if fully set forth herein.

87. Defendants including THE COUNTY OF SUFFOLK, and the individually named defendants, subjected the Plaintiff to a false arrest and malicious prosecution.

88. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials with all the actual and/or apparent authority attendant thereto.

89. The acts complained of were carried out by the aforementioned individual

defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of THE COUNTY OF SUFFOLK, all under the supervision of ranking officers of the Suffolk County Police Department.

90. The aforementioned customs, polices, usages, practices, procedures, and rules of THE COUNTY OF SUFFOLK and the Suffolk County Police Department, include but are not limited to the following unconstitutional practices:

(a) Failing to properly train, in general;

(b) Failing to supervise police officers;

(c) Subjecting persons to violations of their constitutionally protected rights;

(d) Subjecting persons to malicious prosecution.

91. The foregoing customs, policies, usages, practices, procedures and rules of the THE COUNTY OF SUFFOLK and the Suffolk County Police Department constituted a deliberate indifference to the safety, well-being, and constitutional rights of the Plaintiff.

92. The foregoing customs, policies, usages, practices, procedures and rules of the THE COUNTY OF SUFFOLK and the Suffolk County Police Department were the direct and proximate cause of the constitutional violations suffered by plaintiff as alleged herein.

93. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers and were directly responsible for the violation of plaintiff's constitutional rights, for which THE COUNTY OF SUFFOLK is liable.

## DAMAGES AND RELIEF REQUESTED

94. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "93" with the same force and effect as if fully set forth herein.

95. All of the foregoing acts by defendants deprived JOSEPH SORDI of federally protected rights, including, but not limited to, the right:

      A.  Not to be deprived of liberty without due process of law;

      B.  To be free from seizure and arrest not based upon probable cause;

      C.  To be free from unwarranted and malicious criminal prosecution;

      D.  The be free from an unlawful seizure of his property;

      E.  To receive equal protection under the law.

96. By reason of the aforesaid conduct by defendants, plaintiff JOSEPH SORDI is entitled to the sum of fifteen million dollars ($15,000,000.00) in compensatory damages, fifteen million dollars ($15,000,000.00) in punitive damages, plus attorney's fees pursuant to 42 U.S.C. § 1988, as well as costs and disbursements of this action, and any further relief as the Court may find just and proper.

97. By reason of the aforesaid conduct of the defendants, plaintiff JOSEPH SORDI is entitled to an injunction and other equitable relief ordering and instructing the defendants to return his firearms, which are unlawfully seized by the defendants, plus attorney's fees pursuant to 42 U.S.C. § 1988, as well as costs and disbursements of this action, and any further relief as the Court may find just and proper.

**WHEREFORE,** Plaintiff JOSEPH SORDI demands judgment in the sum of fifteen million dollars ($15,000,000.00) in compensatory damages, fifteen million dollars ($15,000,000.00) in punitive damages, and injunctive and equitable relief, plus attorney's fees, costs and disbursements of this action.

Dated:  New York, NY
           February 21, 2013

By: _____

BRYAN KONOSKI (BK7563)
Treyvus & Konoski, P.C.
*Attorney(s) for the Plaintiff*
305 Broadway, 14th Floor
New York, NY 10007
(212) 897-5832